IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs October 29, 2019, at Knoxville

**BARRY LEON FERGUSON v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Dyer County**
**No. 15-CR-77        R. Lee Moore, Jr., Judge**

_____

**No. W2019-00134-CCA-R3-PC**

_____

The petitioner, Barry Leon Ferguson, appeals the denial of his post-conviction petition, arguing the post-conviction court erred in finding he received effective the assistance of counsel prior to and during his guilty plea hearing. After our review of the record, briefs, and applicable law, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J. and D. KELLY THOMAS, JR., J., joined.

Andrew T. Cook, Tiptonville, Tennessee, for the appellant, Barry Leon Ferguson.

Herbert H. Slatery III, Attorney General and Reporter; Katharine K. Decker, Assistant Attorney General; Danny Goodman, Jr., District Attorney General; and Karen Burns, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Facts and Procedural History*

On May 31, 2016, the petitioner pled nolo contendere to possession with intent to sell or deliver cocaine in excess of .5 grams, possession with intent to sell or deliver methamphetamine in excess of .5 grams, possession with intent to sell or deliver marijuana in excess of one-half ounce, and possession with intent to sell or deliver oxycodone, receiving an effective sentence of ten years. As a term of his plea agreement, the petitioner reserved the following certified question of law: "whether probable cause existed for the issuance of the search warrant ultimately leading to [the petitioner's] arrest; specifically, whether there was sufficient police corroboration to cure the defect of

the unreliability of the confidential source." In affirming the trial court on appeal, this Court summarized the facts surrounding the petitioner's conviction, as follows:

This case relates to a search of the [petitioner's] home on November 3, 2014. On October 20, 2014, Investigatory Stoney Hughes of the Dyer County Sheriff's Office submitted an affidavit in which he listed the following as the factual basis supporting probable cause for issuance of a search warrant for the residence:

1. That the sale of illegal drugs generates large amounts of cash. Drug traffickers typically utilize this to purchase assets of all types including, but not limited to, vehicles, jewelry[,] and real estate.

. . .

2. The Confidential Source, hereafter referred to as CS, has contacted the affiant and Lt. Ken Simpson concerning suspect [the petitioner] "AKA Slow" selling cocaine, and cocaine base from his residence at 743 Newbern Roellen Rd.[] A Criminal History query reveals that [the petitioner] has a conviction in Federal Court for sale of cocaine on 06-24-96[.]

3. A vehicle registration query revealed that [the petitioner] has a black 1998 Pontiac currently registered to him at the address of 743 Newbern Roellen Rd.[,] Dyersburg, TN with an expiration date of 03/31/15.

4. Within the past 72 hours, the CS has met with Lt. Ken Simpson[] and the affiant for the purpose of conducting a controlled buy at [the petitioner's] address at 743 Newbern Roellen Rd. from [the petitioner]. The CS [h]ad made an agreement to purchase cocaine base. Lt. Simpson and the affiant searched the CS prior to the purchase and transported the CS to Newbern Roellen Rd. The CS went to the front door of [the petitioner's] [r]esidence, where [the petitioner] came to the door from inside to make the exchange. The CS returned with a white rock like substance that field tested positive for cocaine.

5. Residence to Wit: 743 Newbern Roellen Rd[.], Dyersburg, Tennessee[] 38024. The involved residence is a single story, single family dwelling, with blue siding, a full length front porch with

brown trim and support posts at the corners, a white metal roof, sitting on the west side [o]f Newbern Roellen Rd., facing east, with a black mailbox numbered 743 located on the road side of the property, and being the residence of [the petitioner.]

6. Your affiant requests a search warrant for the residence of 743 Newbern Roellen Rd[.], Dyersburg, Tennessee[] 38024, and all persons, vehicles, and curtilage located at this residence for firearms, cocaine, cocaine base, clandestine cocaine base manufacturing equipment, drug paraphernalia, U.S. Currency, receipts, books, ledgers, notes, computerized[,] and hand written records and all other material evidence of violations of T.C.A. 39-17-417, T.C.A. 39-17-1307, T.C.A. 39-17-1308 and 39-17-1324.

Based on the information contained in the affidavit, Chancellor Tony Childress granted Investigator Hughes's request for a search warrant. During the search, police officers found cocaine, methamphetamine, oxycodone, and marijuana.

At the [petitioner's] preliminary hearing, Investigator Hughes testified that prior to obtaining the search warrant, he and Lieutenant Simpson met with the CS and verified that the [petitioner] lived at the home on Newbern Roellen Road. The [petitioner] was not present when the police arrived to execute the warrant, so the officers "breach[ed]" the door. During the search, they found four white rock-like objects believed to be crack cocaine, four individually-wrapped plastic bags containing a clear crystal-like substance believed to be methamphetamine, two prescription pill bottles containing oxycodone, and seventeen bags of marijuana that appeared to have been packaged for resell. They also found drug paraphernalia, plastic sandwich bags, and digital scales. Investigator Hughes said they found most of the evidence in the kitchen area.

On cross-examination, Investigator Hughes testified that the CS contacted him and told him that "[the petitioner] sells crack cocaine and just cocaine." Defense counsel asked how the CS knew cocaine was being sold from the [petitioner's] residence, and Investigator Hughes answered, "I believe the source had purchased from [the petitioner] before." Investigator Hughes had never used the CS as an informant prior to this case and did not know if the CS was reliable, so he set up a controlled drug-buy between the CS and the [petitioner]. He acknowledged that the CS was a drug user and was not a citizen informant.

Investigator Hughes testified that on the day of the drug-buy, he transported the CS to Newbern Roellen Road and "dropped off" the CS south, but "within a mile" of, the [petitioner's] home. Investigator Hughes was in a vehicle north of the residence and was "pulled over" onto a "field road." He said the CS was not being monitored with video- or audio-recording equipment because "we maintained visual surveillance all the way to the residence and from the residence." However, Investigator Hughes lost visual contact with the CS when the CS "entered the front porch." The CS had twenty dollars for the buy, and the CS bought "one rock" of crack cocaine from the [petitioner].

At the conclusion of the hearing, the Dyer County General Sessions Court bound over five (sic) drug-related charges to the grand jury. In June 2015, the Dyer County Grand Jury indicted the [petitioner] for possession of one-half gram or more of cocaine with intent to sell or deliver, a Class B felony; possession of one-half gram or more of methamphetamine with intent to sell or deliver, a Class B felony; possession of oxycodone with intent to sell or deliver, a Class C felony; and possession o[f] more than one-half ounce of marijuana with intent to sell or deliver, a Class E felony.

The [petitioner] filed a motion to suppress the evidence obtained during the search on the basis that Investigator Hughes's affidavit failed to establish probable cause for the search warrant. In support of his motion, the [petitioner] noted that Investigator Hughes failed to state in the affidavit that the CS had provided information about other drug transactions previously or had any knowledge of drug trafficking. The [petitioner] further noted that Investigator Hughes testified at the preliminary hearing that he did not know if the CS was reliable. The [petitioner] argued that although Investigator Hughes arranged a controlled drug-buy in order to determine the CS's reliability, Investigator Hughes testified at the preliminary hearing that he dropped off the CS within a mile south of the [petitioner's] house and pulled into a field road north of the residence to observe the buy. The [petitioner] then stated, "Proof introduced at the suppression hearing in this matter will confirm that within a mile south of [the petitioner's] residence on Newbern-Roellen Road, and between the intersection of Newbern-Roellen Road and State Highway 104 and [the petitioner's] residence, there are twenty-three (23) residences and four (4) hills with deep troughs between the crests of the hills."

- 4 -

At the suppression hearing, Investigator Hughes testified for the State that he had never met the CS or obtained information from the CS prior to this case and, therefore, set up the controlled drug-buy between the CS and the [petitioner]. Before the buy, Investigator Hughes searched the CS for illegal substances and gave the CS money to purchase cocaine. Investigator Hughes and Lieutenant Simpson "dropped the confidential source off just - just before [the petitioner's] residence and followed the source by vehicle [up to the residence]." The officers then drove past the [petitioner's] house and parked on a field road where they could maintain visual surveillance of the CS. The [petitioner's] front porch was covered by a dark screen, so the officers lost visual contact of the CS when the CS entered the front porch area. The CS exited the [petitioner's] residence two to five minutes later, and the officers maintained visual contact with the CS "just down the road."

Investigator Hughes testified that he and Lieutenant Simpson picked up the CS and that the CS gave them a small package containing a rock-like substance. The substance field-tested positive for cocaine. Investigator Hughes searched the CS but did not find any drugs or money on the CS's person. He submitted an affidavit in support of a search warrant to Chancellor Childress, and Chancellor Childress signed the warrant.

On cross-examination, Investigator Hughes testified that he had never spoken with the CS and that he did not know whether the CS had given information to law enforcement prior to this case. Defense counsel asked if Investigator Hughes considered the CS unreliable prior to this drug buy, and he answered, "I would not say unreliable, just I could not confirm the source's reliability at that point." To confirm the CS's reliability, Investigator Hughes arranged for the CS to buy drugs from the [petitioner]. He said he usually did not use audio- or video-recording equipment during such buys.

Investigator Hughes testified that on the day of the drug-buy, he dropped off the CS on Newbern Roellen Road and that the CS was south of the [petitioner's] residence but north of the intersection with Highway 104. He acknowledged testifying at the preliminary hearing that he dropped off the CS "within a mile" of the [petitioner's] house. He said that when the CS arrived at the [petitioner's] home, the officers drove past the house and parked "just north." The officers maintained visual surveillance of the CS until the CS entered the front porch area. Investigator Hughes estimated that he picked up the CS fifteen to twenty minutes after he dropped off the

CS and said that the CS did not indicate drugs or other people were in the home.

Milly Worley testified for the [petitioner] that she and defense counsel shared office space and that she sometimes did investigative work for counsel. Relevant to this case, Worley "shot" video of Newbern Roellen Road. She described the video as "down from 104 turning onto Newbern-Roellen and down to what, I believe, to be [the petitioner's] house and just past that a little bit and then back." Defense counsel played the video for the trial court and introduced the video into evidence. Defense counsel questioned Worley during the video and she noted that a driver "topped" four hills between Highway 104 and the [petitioner's] home. She described the area as "very up and down" and said she counted twenty-three houses between the highway and the [petitioner's] house. She said that the area north of the [petitioner's] residence was "very flat" but that "there were big evergreen trees, some type of cedar tree, and you could not see [the house] until you were right there on it."

On rebuttal for the State, Investigator Hughes maintained that he kept visual surveillance of the CS "until the source entered the front porch area." On cross-examination, defense counsel asked, "How could you see over those hills?" Investigator Hughes said he and Lieutenant Simpson kept visual surveillance of the CS from the drop-off location to the [petitioner's] house by following the CS in their car. After the CS entered the [petitioner's] house, the officers "pulled in and we could still maintain visual surveillance of the front of the residence." Investigator Hughes was adamant that he could see the [petitioner's] front porch from where the officers were parked on the field road.

The trial court ruled that "[h]ad it not been for the controlled buy," the court would have agreed with the [petitioner] that the affidavit failed to establish probable cause because the affidavit did not establish "the two prongs." However, the court concluded that the controlled drug-buy "corrects that situation" and "does create the probable cause necessary." The trial court said it understood the [petitioner's] claim that the officers could not maintain visual surveillance but accredited Investigator Hughes's testimony that the officers followed the CS until the CS went onto the porch, that the officers drove past the [petitioner's] house, and that they maintained visual surveillance of the home until the CS came outside. The court concluded that "[w]ith the other information from the controlled buy of searching the informant both before and afterwards and . . . the rock like

substance that field tested positive for cocaine," the affidavit established probable cause for issuance of the search warrant. Accordingly, the court denied the [petitioner's] motion to suppress.

*State v. Barry Leon Ferguson*, No. W2017-00113-CCA-R3-CD, 2018 WL 1091805, at *1-4 (Tenn. Crim. App. Feb. 26, 2018), *perm. app. denied* (Tenn. June 8, 2018).

Following the denial of his direct appeal, the petitioner filed a timely pro se petition for post-conviction relief. After the appointment of counsel, the petitioner filed an amended petition for post-conviction relief, arguing trial counsel was ineffective for failing to call Kelly Williams as a witness during the suppression hearing. The post-conviction court held an evidentiary hearing during which the petitioner, Ms. Williams, and trial counsel testified.

The petitioner testified he was concerned about the lack of probable cause for the search warrant and repeatedly raised his concerns to trial counsel. During the suppression hearing, the petitioner believed trial counsel was ineffective for "allow[ing]" Investigator Hughes to change his testimony regarding the circumstances of the controlled buy. The petitioner was also frustrated because he was unable to learn the name of the confidential informant, and he did not understand how the officers were able to prove probable cause without producing the informant. During cross-examination, the petitioner agreed trial counsel questioned Investigator Hughes about the changes in his testimony but asserted trial counsel did not "object to the hearsay" or "present the evidence to support that."

The petitioner testified that his friend Kelly Williams came to his house one day to pick up his laundry. When Ms. Williams arrived, a girl was on the petitioner's front porch, and Ms. Williams agreed to give the girl a ride home. The petitioner believed this girl was the confidential informant because she was "the only person that walked to my house at that time." Ms. Williams told the petitioner she would testify on his behalf, and the petitioner asked trial counsel to speak with Ms. Williams because he believed she was a key witness in his case. Trial counsel, however, did not return Ms. Williams's phone calls. On cross-examination, the petitioner conceded Ms. Williams only knew she gave a girl a ride from the petitioner's house.

When asked about his guilty plea, the petitioner testified he pleaded guilty because trial counsel told him the appellate court would review the denial of his motion to suppress. The petitioner believed trial counsel would "put up" Investigator Hughes's conflicting testimonies, which trial counsel did not do. Looking back, the petitioner testified he would not accept the guilty plea today if he knew "they were [not going to] allow [him] a chance to cross these witnesses."

Ms. Williams testified she has been friends with the petitioner for approximately ten or twenty years. Near the time of the petitioner's arrest, Ms. Williams was helping him with his laundry because the petitioner did not have a washing machine. Ms. Williams testified she gave a girl a ride home from the petitioner's house, and she believed the girl was "supposedly, maybe" the confidential informant in the petitioner's case. Ms. Williams also stated she did not see any police officers watching the girl or the petitioner's house.

Ms. Williams contacted trial counsel about the possibility of testifying on the petitioner's behalf but could not reach trial counsel. On cross-examination, Ms. Williams agreed she did not know the girl's name, and, if she had spoken with trial counsel, the only information she knew was what the girl looked like.

Trial counsel testified he was retained by the petitioner to represent him in this case. The petitioner came to trial counsel's office "fairly regularly" to discuss his case, and the State provided trial counsel with discovery, which he reviewed with the petitioner. Trial counsel testified the discovery "had everything other than the identity of the informant which [the petitioner] wanted." However, trial counsel repeatedly explained to the petitioner that, because the petitioner was charged with intent and not sale, the identity of the confidential informant would not be disclosed. On cross-examination, trial counsel explained the petitioner did not appear confused about his inability to learn the identity of the confidential informant. Rather, the petitioner was frustrated "that that's what the law is."

Regarding the motion to suppress, trial counsel believed the search warrant lacked probable cause "because at the preliminary hearing the confidential informant was admittedly unreliable." During the suppression hearing, trial counsel "vigorously" cross-examined Investigator Hughes regarding "inconsistencies in his testimony at the preliminary hearing and at the suppression hearing." Additionally, trial counsel called Milly Worley to testify about a video she made which showed the road where the petitioner's house was located. The video showed several "hills and troughs" which would have made it hard for the officers to adequately view the confidential informant during the controlled buy.

Following the denial of the motion to suppress, trial counsel filed an interlocutory appeal challenging the denial of the suppression motion, arguing "there [was not] police corroboration to cure the unreliability of the confidential informant." The request for an interlocutory appeal was denied. Eventually, the petitioner agreed to a plea which allowed him to be sentenced as a Range I offender even though he was eligible to be sentenced as a Range II offender and allowed him to appeal a certified question of law

concerning the suppression hearing. Trial counsel explained to the petitioner that if the appeal was not successful, the petitioner would be required to serve his ten-year sentence.

On cross-examination, trial counsel acknowledged the petitioner told him about Ms. Williams giving a girl a ride from the petitioner's house. Trial counsel, who had known Ms. Williams for "probably [thirty] years," "thought" he spoke with Ms. Williams about the petitioner's case but did not have "any specific recollection." Trial counsel testified Ms. Williams was unable to give him any information about the girl, including her name, and trial counsel did not "know what [he could have] done with that information really if [he] had known the name." Although Ms. Williams and the petitioner believed the girl was the confidential informant, trial counsel was unsure. The petitioner also told trial counsel the confidential informant was a girl who had once stolen his car. Trial counsel "[ran] that [lead] to the ground" and contacted the Dyer County Sheriff's Department to obtain more information. However, he was told there was "no record of anyone being investigated or stopped during the time that [the petitioner] told [him]."

After its review of the evidence presented, the post-conviction court denied relief in a written order entered on December 14, 2018. On January 31, 2019, this Court granted the petitioner's motion to late-file his notice of appeal, and, on February 6, 2019, the petitioner filed his notice of appeal.

*Analysis*

On appeal, the petitioner argues trial counsel was ineffective for failing to call Kelly Williams as a witness at the suppression hearing and failing to ensure the petitioner knowingly entered his guilty plea. In addition, the petitioner argues the post-conviction court failed to make adequate credibility determinations as to Ms. Williams. The State contends the post-conviction court made adequate credibility determinations and correctly denied the petition as the petitioner failed to meet his burden. The State also contends the petitioner has waived his claim that trial counsel was ineffective during the petitioner's guilty plea. Following our review of the record and submissions of the parties, we affirm the judgment of the post-conviction court.

The petitioner bears the burden of proving his post-conviction factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). The findings of fact established at a post-conviction evidentiary hearing are conclusive on appeal unless the evidence preponderates against them. *Tidwell v. State*, 922 S.W.2d 497, 500 (Tenn. 1996). This Court will not reweigh or reevaluate evidence of purely factual issues. *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997). However, appellate review of a trial court's application of the law to the facts is *de novo,* with no presumption of correctness.

*See Ruff v. State*, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel presents mixed questions of fact and law. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). Thus, this Court reviews the petitioner's post-conviction allegations *de novo,* affording a presumption of correctness only to the post-conviction court's findings of fact. *Id*.; *Burns v. State*, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner must show both that counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceedings. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the standard for determining ineffective assistance of counsel applied in federal cases is also applied in Tennessee). The *Strickland* standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687. In order for a post-conviction petitioner to succeed, both prongs of the *Strickland* test must be satisfied. *Id*. Thus, courts are not required to even "address both components of the inquiry if the defendant makes an insufficient showing on one." *Id*.; *see also Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (stating that "a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

A petitioner proves a deficiency by showing "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad*, 938 S.W.2d at 369 (citing *Strickland*, 466 U.S. at 688; *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the *Strickland* test is satisfied when the petitioner shows there is a reasonable probability, or "a probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. However, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

- 10 -

## I.       Failure to Present Kelly Williams as a Witness at the Suppression Hearing

First, we must address the petitioner's claim that the post-conviction court failed to make appropriate findings regarding Kelly Williams's testimony pursuant to *Pylant v. State*, 263 S.W.3d 854 (Tenn. 2008).  In *Pylant*, the court held "if the proffered testimony is both admissible and material, the post-conviction court must assess whether the witness is credible."  *Id.* at 869-70.  The State contends the post-conviction court's implicit findings are sufficient.

In its order denying relief, the post-conviction court summarized Ms. Williams's testimony at the evidentiary hearing but failed to make a specific finding of whether the testimony would have been admissible and material.  However, a written finding is not necessary to comply with the mandate of *Pylant*, and the post-conviction court made satisfactory implicit findings.  *See Donald L. Seiber v. State*, No. E2012-00285-CCA-R3-PC, 2011 WL 1484173, at *5 (Tenn. Crim. App. Apr. 19, 2011), *perm. app. denied* (Tenn. Aug. 25, 2011) (noting the supreme court "did not add to the post-conviction court's duties under [Tennessee Code Annotated] section 40-30-111 a requirement that the court make explicit written credibility findings" for every witness presented at the post-conviction hearing).  By accrediting trial counsel's testimony that any information Ms. Williams had was not useful, the post-conviction court implicitly found Ms. Williams's testimony was not material to the petitioner's defense.  Therefore, the post-conviction court was not required to make a credibility finding regarding Ms. Williams's testimony.  *Pylant*, 263 S.W.3d at 869-70.  The petitioner is not entitled to relief.

The petitioner also argues trial counsel was ineffective for failing to call Ms. Williams as a witness at the suppression hearing.  According to the petitioner, Ms. Williams's testimony would have "discredited the State's proof."  The State contends the petitioner failed to meet his burden.

At the post-conviction hearing, Ms. Williams, the petitioner's friend, testified she was at the petitioner's house to pick up his laundry and gave a girl a ride home.  Ms. Williams testified the girl was "supposedly, maybe" the confidential informant.  However, she did not know the girl's name and could only provide a description of the girl's appearance.  Ms. Williams also testified she did not see any police officers near the petitioner's house that day.  Ms. Williams called trial counsel's office to discuss the possibility of testifying on the petitioner's behalf, but trial counsel did not return her messages.  Trial counsel testified he had known Ms. Williams for approximately thirty years.  Although he did not specifically remember speaking with Ms. Williams about the petitioner's case, trial counsel testified Ms. Williams was unable to provide him with any information about the girl, including her name.  Even if Ms. Williams had known the

girl's name, trial counsel was unsure "what [he] could have done with that information" because Ms. Williams was not certain if the girl was the confidential informant.

Although the petitioner contends Ms. Williams's testimony would have "discredited the State's proof," Ms. Williams was not certain the girl was the confidential informant. Ms. Williams also testified she did not know the girl's name and could only describe her appearance to trial counsel. Furthermore, as noted above, trial counsel testified Ms. Williams was unable to provide him with any useful information regarding the girl, and, even if Ms. Williams knew the girl's name, trial counsel did not think he could do anything with that information. Implicit in the post-conviction court's order denying relief is an accreditation of trial counsel's testimony and nothing in the record preponderates against the post-conviction court's factual findings. *See Tidwell*, 922 S.W.2d at 500. In addition, the fact that a trial strategy or tactic failed or was detrimental to the defense does not, alone, support a claim for ineffective assistance of counsel. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). Deference is given to sound tactical decisions made after adequate preparation for the case. *Id.* The petitioner is not entitled to relief on this issue.

## II.     Ineffective Assistance During Guilty Plea

The petitioner argues trial counsel was ineffective for failing to ensure the petitioner knowingly entered his guilty plea. Specifically, the petitioner contends he did not understand why he was unable to learn the identity of the confidential informant and, therefore, did not have "real notice of the true nature of the charges against him." The State contends the petitioner has waived this issue for failing to include it in his petition for post-conviction relief or amended petition for post-conviction relief.

Neither the petitioner's original or amended petitions for post-conviction relief challenged the petitioner's understanding of his plea deal or trial counsel's effectiveness in explaining the law regarding confidential informants. Although the post-conviction hearing transcript indicates trial counsel initially testified the petitioner did not understand why the confidential informant's identity would not be revealed, trial counsel later clarified his prior testimony and stated the petitioner was frustrated with the law but understood the nature of his plea. The post-conviction court made no rulings on this issue.

Because the issue was not before the post-conviction court and no ruling was rendered, we are precluded from review. Issues not raised in the post-conviction petition cannot be raised for the first time on appeal. *Cauthern v. State*, 145 S.W.3d 571, 599 (Tenn. Crim. App. 2004) ("[A]n issue raised for the first time on appeal is waived."). The petitioner has waived review of this issue.

**Conclusion**

Based upon the foregoing authorities and reasoning, we affirm the post-conviction court's judgment denying the petitioner post-conviction relief.

_____
J. ROSS DYER, JUDGE